■ In the Matter of the Final Accounting of BANKERS TRUST COMPANY, as Trustee of the Trust Created by JAMES H. SNOWDEN, for the Benefit of MARIAN A. SNOWDEN, Also Known as MARIAN A. DAVIDSON. JAMES SNOWDEN, III, et al., Appellants; MARIAN S. BROTHERTON et al., Respondents.— Judgment, Supreme Court, New York County, entered on December 17, 1971, so far as appealed from, affirmed, with $50 costs and disbursements to all parties appearing separately and filing separate briefs, payable out of the estate. Affirmance is dictated by the very cases cited in the dissent. If the decisional law on this subject is to be changed, it is not for this court, but for the Court of Appeals, to make that change. Concur — Markewich, J. P., Steuer and Tilzer, JJ.; Nunez and Kupferman, JJ., dissent in the following memorandum by Kupferman, J.: This appeal has to do with the question of whether adopted children are issue within the meaning of a trust agreement. As part of a separation agreement in 1922, a trust was created for the benefit of the wife and three

children of the marriage. When the wife died in 1969, a determination had to be made with respect to the distribution of the principal. The three children are represented by one who is still alive, Marian Snowden Brotherton, three natural children of the late Janet Snowden Gill, and two adopted children, appellants, of the late James H. Snowden, Jr. If the adopted children are considered "issue", the trust fund will be divided in three parts, and if not, it will be divided in two parts, eliminating that portion that comes through the late James H. Snowden, Jr. When the public policy of legal equality between natural children and adopted children was embodied in the Domestic Relations Law, a provision was included with respect to instruments dependent on the "foster parent dying without heirs" so that an adopted child could not be "deemed the child of the foster parents so as to defeat the rights of the remaindermen." This latter provision was eliminated by amendment in 1964, but applies in the instant case. (See prior Domestic Relations Law, § 117 [§ 115 prior thereto]; Matter of Rockefeller (Hubbard) 12 N Y 2d 124.) The sole purpose, obviously, of the provision with respect to cutting off rights of remaindermen, was so that the intent of a testator or other creator of a fund with respect to inheritance by an actual member of the bloodline, could not be deliberately defeated. It takes no clap of thunder from Mount Olympus to conclude that in the instant case there are many reasons why these adopted children should not be excluded. Applying the interpretation in Matter of Park (15 N Y 2d 413) where an adopted child was permitted to take on equal terms with a natural child by virtue of the interpretation that the foster parent did not "die without heirs" because he had a natural child, it can be seen here that there are two other natural bloodlines present. Further, the rights of remaindermen are not defeated, but merely kept to their proper share. But, above and beyond such technical analysis, is the obvious answer on the question of intent in the trust agreement. A general power of appointment by will was given to each child. If the intent was to stay within the bloodline, it was inherently frustrated by such a direction. Further, there was a provision that if there had been no issue of the child living, it would go to the "next of kin then living". It becomes easily apparent that bloodline was indeed remote from any possible intention of the creator of the trust. The judgment should be reversed and the adopted children granted the share that the adopting father would have received had he survived his mother.